James C. O’Brien,
Off. Ref. Although this is a habeas corpus proceeding, the parties have been entitled plaintiff and defendants, respectively, and I shall so refer to them herein.
Plaintiff is the natural mother of the child “James”, who is the subject of this proceeding. He was born in the City of Rochester, New York, on August 31, 1956 and, accordingly, was about two and one-half years old at the time of the recent trial. The defendants are not related to plaintiff or the child, either by blood or marriage. He is presently in their custody. Plaintiff is entitled to retake him from them unless she has abandoned him or is unfit to have his custody. (Dick v. Scarfia, 7 A D 2d 618; People ex rel. Kropp v. Shepsky, 305 N. Y. 465.) I pass to *288 a consideration of the question of abandonment and her fitness as they were both raised by defendants in their answer and proof addressed to both of them was adduced upon the trial.
Plaintiff is a rather attractive looking, young woman, 23 years of age. She was married in 1951. She had a legitimate child born in September, 1952. This child she boarded out and he is presently being cared for by his paternal grandparents. There is no judicial decree divorcing or separating plaintiff from her husband. However, they have not lived together since she left him in August, 1952. Since she and her husband ceased living together, she has had at least two children. Both were born out of wedlock. One is the subject of our proceeding. He was born August 31,1956. The other was born October 3, 1958. Another child born in 1954 defendants attribute to her and the evidence strongly supports this contention. She denies that she is the mother of this child. I do not feel the evidence is sufficiently strong to warrant a finding as to whether or not she is his mother.
When the plaintiff was about six or seven months pregnant with the child with whom we are here concerned, she told the defendants, with whom she was then on very friendly terms, that they could have the child when it was born. No conditions were attached to this offer on her part. After the child was born and had reached the age of six or seven weeks, on October 19, 1956, the defendants, at plaintiff’s invitation, came to plaintiff’s sister’s home. The child was there lying on the bed and plaintiff said to the defendants in substance, “ There he is, take him ”.
Defendants did take the little boy and have had him in their care ever since. The evidence supports defendants’ contention that they have properly and affectionately cared for the child in their home ever since that time. No children were born of the marriage between the defendants. Michael Searfia never had a child but his wife, Ruth, did have a child by her first marriage. He is now about 16 years of age and is residing with and cared for by her parents in the State of Michigan.
In July or August of 1957, some 9 or 10 months after plaintiff gave the child to the defendants, she visited them and demanded his return. Defendants refused and this proceeding resulted.
During the time the boy has been with the defendants, plaintiff never came to visit him nor inquired about his health or welfare until the day in July or August when she demanded his return. She never contributed any funds for his support or luxuries for him, except on one occasion when she sent him a toy dog. During this 9- or 10-month period, between the *289 date of her turning over the child to the defendants and her demand for his return, she evinced no interest in him.
Such conduct on her part, especially her lack of affection for the child and her lack of interest in his welfare, her failure to visit him or even inquire about him, her failure to contribute to his support or to demonstrate her affection for him following her original, unconditional giving of the child to the defendants, I find to be a complete renouncement by her of the rights in the child and an abandonment of him. (See dissenting opinion of McLaughlin-, J., and cases cited, Matter of Bistany, 239 N. Y. 19.)
I agree with plaintiff’s counsel that the law does not necessarily deprive plaintiff of all rights to her child by reason of even one or several acts of adultery. (People ex rel. Ragona v. de Saint Cyr, 207 Misc. 194.) However, the plaintiff is currently " keeping company” with a man of whom she is fond and whom she sees frequently. This man’s name appears as the father of the plaintiff’s child born on October 3,1958. I find plaintiff’s current, as well as her past, relations with this man to be and have been adulterous and continuing.
Plaintiff has not told us the whereabouts of her youngest child born less than sis months ago. We have not any evidence that she has either love or interest in this child. It seems to me that her giving up to her husband and his parents of the custody of her first born was casual and easy. All in all, she has not demonstrated any capacity for affection for or willingness to assume the responsibility of bringing up any of her offspring. She is, I feel, more fond of pleasure and the companionship of her paramour than she is of duty and the joys of motherhood. It appears that her paramour is an independent spirit and does not care to be tied down by the responsibility of rearing a child. Plaintiff, of course, is very young and I do not mean to castigate her unduly. However, I am constrained by evidence to and I do find that by reason of her habits, her emotional immaturity, her irresponsibility, and her disposition, she is unfit to have the custody and the responsibility of bringing up “ James ”, the child who is the subject of this proceeding.
Her intention, she tells us, is to put this child under the care of her unmarried sister in the latter’s rather small apartment to be cared for by the sister while plaintiff herself works. This arrangement is hardly conducive to the welfare of the child since the sister already has seven children of her own to care for. Whether or not the defendants should be permitted to adopt the child, as they apparently wish to do, is not here decided. They appear to be attached to the child and not unsuit *290 able as foster parents. However, the question as to whether or. not an adoption will be permitted should be left for determination upon their petition. Such determination will be preceded, doubtless, by an investigation of them and their home which this court has not been able to make. The petition should be dismissed, without costs.
The foregoing constitutes my written decision, made and signed in accordance with section 440 of the Civil Practice Act.
An order hereon, approved as to form by counsel for the plaintiff, may be presented by defendants’ counsel. If such approval cannot be secured, the form of the order may be settled upon five days’ written notice.